### CENTRAL TELEPHONE CO. OF FLORIDA v. CENTURY CONSTRUCTION CORP.

No. 77-2704.

Circuit Court, Leon County.

April 19 and September 29, 1978.

James D. Beasley of Ausley, McMullen, McGehee, Carothers & Proctor, Tallahassee, for the plaintiff.

M. Stephen Turner of Thompson, Wadsworth, Messer, Turner & Rhodes, Tallahassee, for the defendant.

CHARLES E. MINER, Jr., Circuit Judge.

*Partial summary judgment, April 19, 1978:* In this action for declaratory relief, the court is faced with the issue of whether the costs of relocating certain aboveground telephone facilities owned by plaintiff, Central Telephone Company of Florida (Centel), should be borne by plaintiff or the defendant, Century Construction Corporation (Century). This court has jurisdiction of this cause by virtue of Article V, Section 5(b), Florida Constitution, and Chapter 86, Florida Statutes.

At the hearing conducted in this cause on February 15, 1978, both Centel and Century orally moved for summary judgment on the issue of liability. By written stipulation, the parties are in agreement that there exist no disputed issues of material fact which would preclude the final disposition of the liability issue by way of summary judgment. The court has considered the pleadings, stipulations, legal memoranda, and other papers filed in this action, as well as the arguments presented by counsel at two hearings in this cause.

The record discloses that in 1974 Centel was issued a permit by the State Department of Transportation, authorizing it to install certain telephone facilities along the west right-of-way of Meridian Road in Leon County, including that portion of such right-of-way in the vicinity of the intersection of Meridian and Timberline Roads. Such permit in part authorized Centel to locate an above-ground access facility known as a "pedestal," together with related cables, near the point where Meridian and Timberline Road meet. These telephone facilities were installed in accordance with Centel's permit.

Century later determined that it would need an entrance way and road leading into its planned residential subdivision known as Lake Shore Estates Unit No. 4. Accordingly, Century applied for and obtained in 1977 a permit from the State Department of Transportation, authorizing it to construct over the Meridian Road right-of-way an entrance way leading into the subdivision. In order to obtain such permit, Century agreed to construct turn lanes as a part of the entrance way. Additionally, Century located the road in such a way as to obtain eventual acceptance of the road by Leon County upon completion and final approval of the road and the subdivision plat dedicating it.

The parties agree that the decision to construct the road leading into the subdivision was made by Century, and that Centel's pedestal and related cables had to be relocated at a cost originally estimated to be $4,313 in order to accommodate Century's construction of one of the turn lanes included in the entrance way. Being at odds as to which of them should be held responsible for the relocation costs in question, the parties entered into a written agreement, a copy of which is attached to the complaint as Exhibit "C," which has permitted the relocation to be accomplished during the pedency of this litigation.

The costs involved in the relocation of Centel's previously permitted pedestal and related cables in order to accommodate Century's subsequently permitted construction are properly viewed as one component of the overall construction costs assumed by Century when it elected to construct the subdivision road and entrance way in question. In applying for its Department of Transportation permit, Century assumed responsibility for all costs of the permitted construction. Century is likewise responsible for all costs involved in constructing the road and entrance way in such a manner as to gain final approval and acceptance by Leon County.

The provisions of Section 338.19, Florida Statutes, do not apply to the circumstances before the court in that Century — as opposed to the state or any other governmental authority — elected to perform the construction which necessitated the relocation of Centel's facilities. This is not altered by the fact that the State Department of Transportation imposed certain conditions incident to the approval of Century's permit, nor by the fact that Century planned the construction in question in a manner calculated to eventually gain county acceptance of the road and entrance way. The same considerations distinguish the various authorities cited by Century in support of the view that Centel is not entitled to be compensated for having relocated its facilities. Those authorities apply only under circumstances where the activity requiring the relocation is initiated by a public body.

During the hearings conducted in this cause, and by way of legal memoranda, Century has emphasized that the road and entrance way in question, once accepted by Leon County for purposes of ownership and maintenance, would be available to the public. Additionally, Century has filed evidence of the county commission's acceptance of the plat of Lake Shore Estates Unit No. 4. However, such acceptance cannot relate back to immunize Century from liability for all costs associated with construction of the road and entrance way. The circumstances here are that Centel relocated its facilities at the request of Century in order to enable Century to put its road and entrance way in a condition the

county would accept. Century's obligation to compensate Centel for its services was privately incurred, much the same as Century's obligation to compensate any contractors or materialmen who may have assisted Century in the accomplishment of its permitted construction. Nor does the subsequently acquired public character and ownership of the road and entrance way in question render moot Centel's claim for compensation. In this regard, Century's attempted reliance upon *Collins v. Jackson County*, 156 So.2d 24 (Fla. 1st D.C.A. 1963) and *Padgett v. Bay County*, 187 So.2d 410 (1966), is misplaced. Both of those decisions involved factual circumstances and legal issues not present in the case at bar.

In view of the foregoing, the court is of the view that Century is liable to Centel for the costs incurred by the latter in relocating the telephone facilities in question. It is therefore ordered, adjudged and decreed as follows —

A. The motion for summary judgment of defendant Century be and the same is hereby denied.

B. Centel's motion for summary judgment on the issue of liability be and the same is hereby granted.

C. Century is liable to Centel for the costs incurred by the latter in relocating the telephone facilities in question.

D. The parties have yet to present evidence regarding the amount of costs incurred by Centel in relocating the telephone facilities in question. The court therefore retains jurisdiction in this cause to resolve any dispute which may arise between the parties concerning the amount of relocation costs for which Century is liable to Centel, as well as to enter judgment for attorneys' fees and costs in accordance with the provisions of paragraph 5 of the agreement attached to the complaint as Exhibit "C."

*Final judgment, September 29, 1978:* This cause came on for final hearing before the court on August 28, 1978, pursuant to adequate notice, and the court has given consideration to the evidence presented on behalf of the parties, as well as to the exhaustive legal memoranda furnished to the court.

By way of partial summary judgment previously entered in this cause and dated April 19, 1978, the court has determined that the defendant Century is liable to the plaintiff Centel for the costs incurred by Centel in relocating certain of its above-ground telephone facilities in order to permit Century to construct an entrance way into its private subdivision development known as Lake Shore Estates Unit No. 4. Although Century, at final hearing, filed a motion for the court to reconsider its holding on the question of

liability, Century has failed to present any argument or authorities warranting a different result. Accordingly, the court adheres to the ruling set forth in the partial summary judgment entered in this cause on April 19, 1978, and hereby confirms the denial of the motion to reconsider filed by Century at the final hearing in this cause.

Having disposed of the liability issue the court must now consider the amount of damages for which Century is liable. This involves a determination of the costs necessarily incurred by Centel in relocating its facilities in order to accommodate Century's entrance way construction. The burden of establishing these costs is, of course, to be borne by Centel.

At the final hearing conducted on August 28, 1978, Centel elicited testimony from three witnesses: Century's president, the Centel facilities engineer charged with direct supervision of the relocation work in question, and Centel's division accounting manager.

Century's president conceded that the parties worked together to minimize the cost of the relocation work in question. The records show that both parties knew in advance that the estimated cost of the job in question had been reduced from in excess of $6,000 down to the estimate of $4,313 referred to in the complaint.

Both the Centel facilities engineer and division accounting manager identified and authenticated a document entitled "Central Telephone and Utilities Corporation Job Order Activity Report . . . Job Order No. 7914" (hereinafter referred to as "the job report"). The job report was identified as a computer printout, prepared in the regular course of business, which details all of the costs in the regular course of business, which details all of the costs attributable to the relocation work involved in this action.

The job report was introduced by Centel with reference to the Uniform Business Records as Evidence Act, §92.36, Fla. Stat. ("Business Records Act"), and Century objected to the admissibility of such document with the contention that it was not qualified in accordance with the requirements of the Business Records Act. The court, having considered legal memoranda from both of the parties on this issue, and having applied the criteria contained in the Business Records Act to the facts established at final hearing, concludes that the job report in question was properly authenticated and qualifies for admission into evidence in this cause.

The job report was shown by competent, substantial testimony to be of a category of reports routinely prepared by Centel in the regular course of business with respect to virtually all its construc-

tion projects. The Centel facilities engineer who testified at final hearing was shown to be the custodian and primary user of the report. Furthermore, the Centel division accounting manager testified as to his overall responsibility for all Centel accounting documents and procedures. Both of these witnesses fielded extensive cross-examination questions regarding the identity, mode, method, and time of preparation of the job report, and the sources of information contained in such report. Century contended that neither Centel witnesses qualified to identify and authenticate the job report. However, the several authorities cited by Century in support of this contention are factually distinguishable from the case at bar.

Century further contended that the job report was not prepared at or near the time of the relocation work in question. The court is satisfied, however, that the job report was prepared as near as practicable to the time when the costs in question were incurred. The record shows that a true determination of costs associated with the relocation work performed by Centel could not be made at the job site. Instead, the cost determination was possible only after the application of complex computerized cost accounting formulae. The computer runs which generated the job report were accomplished monthly, and it would be unreasonable to require any large, computer-dependent corporation to prepare such reports at more frequent intervals. Daily computer runs would not increase the probability of trustworthiness of the cost data, but on the contrary, could very well generate confusion and enhance the potential for error, and thereby actually reduce the trustworthiness of such job reports.

The court also notes that reports of the type in question must be relied upon by Centel in the daily conduct of its business, and that such reports are routinely audited by independent accounting firms and various regulatory bodies.

Given the foregoing, it is apparent that the job report in question was the very first available, and perhaps the only, reliable tool with which to determine the costs associated with the relocation work in question.

Century endeavored to cast doubt on the reliability of the job report, but its efforts in this regard were not persuasive. The arguments put forth by Century in opposing the admissibility of the job report run counter to the recognized goal of the Business Records Act to liberalize the allowance of shop book memoranda.

In view of the foregoing, the court is of the opinion that Centel has met its burden of establishing the admissibility of the job report under §92.36, Fla. Stat., and that the sources of information,

method and time of preparation of such report were such as to justify admission of such report.

The Centel company witnesses explained that the job report shows that the cost of relocating the Centel facilities in question totalled $5,026.08, from which Centel deducted $211.43, representing the upgrading of one of the cables involved from a 100 pair cable to a 200 pair cable. After such adjustment, the cost of the relocation work (excluding betterment) totalled $4,814.65, based on the job report and the supporting testimony of the two Centel company witnesses. Such amount appears to be within a reasonable proximity of the $4,313 estimate which was preapred prior to the performance of any of the work in question. The difference was adequately explained by the Centel company witnesses who indicated that Centel, going into the project, had no way of knowing exactly what costs would be encountered, or how much effort would be required in order to handle unanticipated problems.

In view of the foregoing, and in consideration of all of the other evidence presented at final hearing, the court is of the opinion that Centel has, by a preponderance of the evidence, met its burden of establishing that the relocation costs for which Century is liable total $4,814.65.

Finally, the parties previously entered into a written agreement, attached as Exhibit "C" to the complaint filed in this cause, which provides for the payment of $500 by the party determined to be liable for the relocation costs, to the prevailing party, to be applied toward attorney's fees and costs. In view of the disposition of this cause, the agreement requires that said amount be paid by Century to Centel.

Whereupon, it is ordered, adjudged and decreed as follows —

(a) The matters set forth in the partial summary judgment previously entered in this cause and dated April 19, 1978, are hereby confirmed in all respects, and Century is liable to Centel for the costs incurred by the latter in performing the relocation work which is the subject of this action.

(b) The job report introduced by Centel at final hearing in this cause as Exhibit 3 was properly identified and authenticated by the two Centel company witnesses and is competent, admissible evidence from which to determine the total cost for which Century is liable to Centel.

(c) By reference to the contents of the job report and through testimony elicited at final hearing, Centel has, by a preponderance of the evidence, demonstrated that the costs properly attributable to the relocation work in question, and for which Century is liable,

totalled $4,814.65. It is therefore adjudged that plaintiff, Centel, recover from defendant, Century, the sum of $4,814.65, for which let execution issue.

(d) It is further adjudged that Centel recover from Century the sum of $500, to be applied toward attorney's fees and costs pursuant to the agreement between the parties attached as Exhibit "C" to the complaint, for which let execution issue.